N. H. COOK v. J. P. GATEWOOD.

1. SALE BY SHERIFF OF MORTGAGED PROPERTY.—Upon a sale under execution of the equity of redemption, where a larger sum is bid than the amount of the judgment under which the sale is made, the purchaser at such sheriff sale upon buying in the incumbrance is not thereby entitled to the excess bid at the execution sale.

2. GARNISHMENT.—Such excess is subject to garnishment in proceedings against the judgment debtor.

APPEAL from Johnson. Tried below before the Hon. Charles Seward.

The facts are stated in the opinion.

No briefs came to the reporters.

Devine, Associate Justice.—The appellee, Gatewood, brought suit on two notes and an open account against John H. Johnson. The petition alleged Johnson was a non-resident. An attachment was prayed for and obtained, and a writ of garnishment issued and was served on T. D. Lorance, who held three hundred dollars claimed to be the property of defendant Johnson. Pending the suit between appellee Gatewood and Johnson appellant Cook intervened and insisted that in 1869 he had an execution issued on a judgment held by him against defendant Johnson; that it was levied on a house and lot in the town of Cleburne, Johnson county, the same being the property of defendant Johnson; that at the sheriff's sale he became the purchaser at five hundred dollars, three hundred dollars more than the amount of his debt; that at the time he purchased there was a mortgage prior to his judgment existing as a lien on the property; that there was an agreement between himself and the sheriff that the three hundred dollars overplus paid by him was to go in liquidation of the Chambers mortgage; that he is now the owner by purchase of the Chambers mortgage debt; and he prayed in consideration of the premises that the money in the hands of Lorance, the garnishee, be decreed to belong to him.

The jury, under the charge of the court, rendered a verdict in favor of appellee Gatewood for the three hundred dollars in the hands of the garnishee, Lorance.

The first assignment of error, that the court erred in not permitting a witness to explain what was meant by the words "subject to Chambers' mortgage," is not shown by an inspection of the bill of exceptions taken on this subject or by an examination of the statement of facts. Chambers had a mortgage on the land prior to appellant's judgment, and known to him when he levied on the land and purchased at the sale. The sheriff advertised the house and lot for sale to satisfy appellant's judgment and costs,

"subject to Chambers' mortgage." He made his return of sale, the return being written by appellant's (then) attorney. It stated, after describing the property, "which is levied on subject (and the sale of said property thereunder) to a mortgage made by said defendant, J. H. Johnson, to one B. J. Chambers, and levied subject to the lien created thereby," and then proceeded to state the sale, after due advertisement, at time and place required by law, when the same was struck off to appellant Cook for the sum of five hundred dollars, being three hundred dollars over the amount of the judgment. The return then states, "and there having been received by me more money than was sufficient to satisfy the within execution, the same is now here, the surplus and overplus, in court for the benefit of the defendant, his agent or attorney."

This was written for the sheriff by the former attorney of the intervenor, Cook; it is sufficiently clear; there is no ambiguity in it, and the court did not err in refusing to permit the witness to explain what was meant by the words sold "subject to Chambers' mortgage."

There was no error in the statement of the court complained of in the first bill of exceptions, "that there was no necessity in appellee Gatewood's reading either the writ of attachment or garnishment; that the only question before the court was who was entitled to the money." That was the only real question for the consideration of the jury. We have nothing before us in the transcript, neither can we learn from the bill of exceptions what judgment is referred to, or what were the precise rulings of the court on the question of the alleged former judgment, and see nothing to affirm or disapprove of on this point.

There is nothing to complain of in the charge of the court. It is clear and unequivocal in all its parts, framed with reference to the issues presented and the facts in evidence, and was decidedly favorable to the appellant, directing, in substance, the jury to find in favor of the intervenor,

Cook, if they believed from the evidence that the case was as stated in his pleading and testified to by him on the trial.

There was no error in the closing portion of the charge which informed the jury that "if a judgment creditor buys property levied upon by virtue of his execution in the absence of fraud, and bids an overplus, or more money than is due him upon the execution, the overplus is the property of the execution debtor, and the execution creditor cannot control the same in any respect without the consent of the execution debtor."

The evidence in the case supports the verdict—the advertisements of the intended sale posted up by the sheriff; the return of sale written on the execution by the attorney of the purchaser and signed by the sheriff; the positive and explicit statements of the latter as a witness to the same effect—and all the witnesses agreed that it was announced at the sale that the house and lot were to be sold subject to the Chambers mortgage. The evidence on the part of appellant was that there was an understanding between himself and the sheriff that the $300 were to be held for the payment of the Chambers mortgage, and the sheriff positively denied that any such agreement existed between himself and the intervenor. With this conflict of evidence it was for the jury to determine, particularly so in a case so nearly balanced as this; and we are satisfied their verdict is supported by the evidence. The property was shown to be worth $700 or $800. The Chambers mortgage was a lien on the property, and after the decree of foreclosure and order of sale the property was primarily liable for it, and it could unquestionably have been sold to satisfy the debt. That this would be an idle or foolish proceeding, by reason of appellant being not only the holder of the mortgage judgment, but likewise the owner of the property on which this mortgage judgment was a lien, cannot affect the right of a creditor to claim in satisfaction of his

debt money of the original owner of this property being in the hands of a third party.

Affirmed.