### GULF NAT. BANK v. SHELTON et al. (No. 5657.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 10, 1916.)

1. GARNISHMENT ⬥61—OBLIGATIONS SUBJECT TO GARNISHMENT.

One who would garnish assets derived from or through an executor or administrator must show that the original title by which the executor or administrator holds the property has changed, and that he now holds the property in some capacity other than as a representative of the decedent.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 119; Dec. Dig. ⬥61.]

2. GARNISHMENT ⬥61—MONEYS SUBJECT TO GARNISHMENT—STATUTES.

Rev. St. 1911, art. 3447, provides that, when the court has passed upon a claim against the estate of a decedent, its action shall be entered upon the claim docket and indorsed on the claim, together with the classification, while article 3452 declares that such action shall have the force of a final judgment. Articles 3458, 3459, define the classes of claims, and provide that, when there is a deficiency of assets to pay all claims of one class, they shall be prorated, while articles 3464, 3466, require the executor or administrator to file after 12 months an exhibit setting forth a list of all claims presented, specifying those rejected and allowed, and provide that upon the return of the exhibit, if it shall appear that the estate is solvent, taking into consideration all claims presented on which suit has been or yet can be instituted, it shall be the duty of the county judge to order immediate payment. Articles 3467, 3470, declare that, if the funds on hand are not sufficient for the payment of all claims, the court shall order payment of claims having a preference, and that in all cases where an order shall be made by any county judge for an executor or administrator to pay over money such executor or administrator shall for failure be liable on his official bond for damages at the rate of 5 per cent. a month. An order was made allowing and classifying a claim in favor of a judgment debtor as a claim of the second class. *Held*, that as, in view of article 3466, payment by the executor need not be made for 12 months, funds in the hands of the executor are not during that time subject to garnishment, though it be averred that the estate is solvent.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 119; Dec. Dig. ⬥61.]

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by the Gulf National Bank against T. H. Bass and others, in which H. H. Shelton and others were garnished. From a judgment for garnishees, plaintiff appeals. Affirmed.

Terrell, Walthall & Terrell, of San Antonio, for appellant. James Routledge, of San Antonio, for appellees.

MOURSUND, J. On March 27, 1913, in cause No. 88 in the district court of Jefferson county, styled Gulf National Bank v. T. H. Bass, C. L. Bass, and Mally Eastham, the plaintiff recovered a judgment against all of the defendants for $3,468.33, with interest thereon at the rate of 8 per cent. and for foreclosure of lien on 25 shares of stock in the Union Trust Company. On November 22, 1914, plaintiff filed its affidavit for a writ of garnishment against H. H. Shelton, Dwight E. Potter, and Luisa Wilhelmi, as executrix of the estate of Dolores G. Wilhelmi. The writ of garnishment was issued and served. Luisa Wilhelmi answered on

December 24, 1914, by certain exceptions to the affidavit and writ of garnishment, and prayed that the application be quashed. On December 24, 1914, she answered that she was not, and had not been at the time the writ was served upon her, indebted to C. L. Bass, and that she had no effects belonging to him, etc. On December 31, 1914, the Gulf National Bank filed an affidavit controverting Luisa Wilhelmi's answer, in which it was alleged that defendant C. L. Bass had performed legal services for the estate of Dolores Wilhelmi, deceased, of which Luisa Wilhelmi is executrix, which estate is pending in Bexar county, Tex., and for which services Hon. J. R. Davis, judge of said court, has approved and allowed a fee to said C. L. Bass amounting to $7,500, and duly entered an order of which a copy was attached to the controverting affidavit. It was further alleged that the approximate value of the estate is $60,000; that plaintiff is informed and believes that all first-class claims against the estate have been paid and satisfied, and that in due course of time the claim of said Bass, being a second-class claim, will be paid; that the total sum of all second-class claims against said estate outside of the sum due Bass does not exceed $5,000; that no part of said fee has been paid by said executrix, but that she, as executrix of said estate, is still indebted to the defendant Bass in the said sum of $7,500. The order by the probate court, after reciting the finding that the amount of $7,500 was the reasonable value of the services of Bass, provides as follows:

"Wherefore it is considered, ordered, adjudged, and decreed that C. L. Bass do have and recover the sum of $7,500, together with 6 per cent. interest per year from date hereof, from the estate of Dolores Gonzales Wilhelmi, and that same classed as a second-class claim as defined under article 3458 of Revised Civil Statutes of the state of Texas, and that said sum shall be paid to said Bass by Luisa Wilhelmi, as executrix of the will of Dolores Gonzales Wilhelmi, or by any successor of said executor, out of any funds available and that may become available for such purpose."

The cause was transferred to the district court of Bexar county, fifty-seventh district. C. L. Bass filed his amended petition of intervention, and Luisa Wilhelmi her answer to the controverting affidavit. The court sustained the general demurrers urged by Bass and Mrs. Wilhelmi to the garnishment proceedings and the controverting affidavit, and the plaintiff having failed to amend, and announced that it would not do so, judgment was entered that plaintiff take nothing against the garnishee Luisa Wilhelmi, as executrix of the estate of Dolores G. Wilhelmi. The proceedings were dismissed as to Shelton and Potter.

The only question to be decided is whether, under the allegations of the controverting affidavit, the claim of Bass evidenced by the order of the county court can be subjected to the payment of appellant's judgment by means of garnishment proceedings instituted against Luisa Wilhelmi, executrix.

[1] The rule formerly was that executors and administrators were not subject to garnishment at all unless the right was given by statute. But, as this rule was based upon the proposition that one court could not be permitted to interfere with or encroach upon the jurisdiction of another, and not upon the theory that persons justly indebted to others should have assets exempted from the payment of their just debts because they collected them through an officer of the probate court, it was found by many courts that some modification of the original rule was called for. It was therefore held that, when a decree of distribution has been made whereby each share is finally and definitely determined, such share may be reached by garnishment on the theory that a cause of action exists in favor of the distributee in his individual capacity. Boyer v. Hawkins, 86 Iowa, 40, 52 N. W. 659; Richards v. Griggs, 16 Mo. 416, 57 Am. Dec. 240; Harrington v. La Rocque, 13 Or. 344, 10 Pac. 498; Re Nerac, 35 Cal. 392, 95 Am. Dec. 111. Mr. Woerner, in his work on the American Law of Administration, vol. 1, § 177, says:

"And, since the ownership is in the first place always that of executor or administrator, it is incumbent upon any one who would attach a right to the assets derived from or through the executor or administrator personally to show that the original title has been changed, and that he holds the property in some other capacity, which may be done by proving a sale, conversion, or merger in any of the methods by which a personal representative may divest the title of his testator or intestate. Hence, since an order of distribution, or to pay debts or legacies, operates to change the representative's official to a fixed personal liability, it follows that he may thereafter, and before payment, be summoned as garnishee by an attaching or execution creditor of the beneficiary to whom the executor or administrator is ordered to pay. Conversely it is generally held that, while holding in his representative character, he is not subject to garnishment process, unless he is made so by express statutory provision, as is the case in a large and increasing number of the states."

In section 411 the author describes the order to pay debts meant by him in the above quotation. Briefly stated, it is an order made after the time for proving debts has expired, or the time for proving the preferred class has expired, and the administrator or executor has made a complete statement of the condition of the estate. The author says:

"The court will thereupon decree the payment of the debts which have been proved, in the order of the classes to which they were assigned, each class to be paid in full before the next inferior class receives anything; and when the assets are sufficient to pay a part, but not the whole, of the debts of any one class, the creditors of that class will be payable pro rata. The order or decree of payment so made corresponds in some measure to the judgment de bonis propriis at common law, because, having ascertained the amount of assets in the administrator's hands available for the payment of debts,

and also the amount to which each creditor is entitled, the court, by its order or decree, renders judgment against the administrator, making him liable personally to the creditor for the specified amount, which is enforceable by execution against him, and by suit on the bond of his sureties, and subjecting him thereafter, in most states, to garnishment by a creditor of the creditor whom he is ordered to pay."

Mr. Freeman, in his work on Executions, in section 131, says:

"When the share of a creditor, heir, legatee, ward, or other person entitled to moneys in the hands of an administrator, executor, or guardian has been settled by the court and ordered to be paid, it is no longer regarded as in custody of the law. The right to it has became fixed, absolute, and capable of enforcement by action at law. It may therefore be garnished."

This statement of the rule is a brief statement of the same rule announced by Mr. Woerner, as is shown by the construction placed thereon by Mr. Justice Bonner, in Pace v. Smith, 57 Tex. 561.

Mr. Shinn, in his work on Attachments, apparently limits the exceptions to the old rule to cases in which a change has been made by statute, and makes the following succinct statement of the rule to be applied in determining when garnishment will lie, which is a substantial repetition of the rule announced by Mr. Woerner and Mr. Freeman, viz.:

"In states permitting an executor or administrator to be made a garnishee, he may be held as such whenever the person to whom he is to pay the legacy or distributive share may maintain an action at law against such executor or administrator. After a court has decreed a distribution of the proceeds in the hands of the administrator, such administrator may be held as garnishee."

It has never been held that the rule announced by these authors, and in the cited cases, was the law in this state, and in fact there are expressions in some of the opinions indicating an intention to adhere strictly to the old rule. However, our Supreme Court has recently held, in the case of Turner v. Gibson, 105 Tex. 488, 151 S. W. 793, that a balance in the hands of a sheriff, after satisfying an execution, was subject to garnishment; that it was held in a private, and not an official, capacity, and the opinion of the court shows that said court does not favor a rule to the effect that all funds which come into the hands of an officer of the court remain in the custody of the law as long as in his hands, but one which limits the custody of the court to such time as is necessary to protect its jurisdiction from invasion by another tribunal or officer. In the opinion of the Court of Civil Appeals, approved by the Supreme Court, reported in 152 S. W. 840, the case was distinguished from the cases of Pace v. Smith, 57 Tex. 555, and Loftus v. Williams, 24 Tex. Civ. App. 393, 59 S. W. 291, on the ground that the sheriff held it under a statute, and not subject to the order of any court, and there

was no order of any court directing its payment. We will not pause to inquire whether this distinction is well founded; for the statute relating to the duty of the clerk in such matters and the rules applicable differ from the statutes relating to estates of decedents and the construction of such statutes by our courts.

We conclude that the rule stated by Mr. Woerner, and followed in the cases first cited herein, correctly states the test to be applied in determining when the custody of the court ceases in the administration of estates of decedents, and, there being no case in our state in which the contrary has been directly held, it will be applied by us in this case.

[2] In this connection we find that our statutes relating to the estates of decedents contain nothing inconsistent with such rule. We will state the substance of the articles deemed material, and then discuss the question whether the order approving Bass' claim was such a one as made the executrix liable to garnishment. Article 3435 requires claims to be presented within 12 months, or payment thereof will be postponed until after those presented within that time. Article 3436 requires claims for funeral expenses and those of the last sickness to be presented within 60 days, or else property set apart as exempt or for allowances made the widow and minor children will not be liable for the payment thereof. Article 3446 provides that all claims allowed by the executor or administrator shall be acted upon by the court at a regular term, and either approved in whole or in part or rejected, and shall at the same time be classified. Article 3447 provides that, when the court has passed upon a claim, its action shall be entered upon the claim docket and indorsed on the claim, together with the classification. Article 3452 provides that such action of the court shall have the force and effect of a final judgment, from which an appeal may be taken. Article 3458 defines the classes of claims. The first class comprises claims for funeral expenses and those of the last illness, while the second class comprises expenses of administration and those incurred in the preservation, safe-keeping, and management of the estate. The other classes need not be mentioned. Article 3459 provides that, when there is a deficiency of assets to pay all claims of the same class, they shall be paid pro rata; and no executor or administrator shall be allowed to pay any claims, whether the estate is solvent or insolvent, except with their pro rata amount of the funds that have come to hand. Article 3460 provides that executors and administrators, whenever they have funds in their hands, shall pay: (1) The first-class claims presented within 60 days; (2) allowances made to the widow and children or either; and (3) second-class claims above defined. Article 3462 provides

that, whenever the executor or administrator has funds sufficient to pay a claim or any part thereof, and fails to make payment when required to do so by the owner of the claim, such owner may obtain an order directing such payment to be made, upon proof that there are funds which should be paid thereon. Article 3464 requires the executor or administrator, after 12 months to file an exhibit setting forth a list of all claims presented within 12 months, specifying those allowed by him and those rejected, and the date of their rejection, also those sued upon, and shall state the condition of the suit, also setting forth fully the condition of the estate. Article 3466 reads as follows:

"Upon the return of such exhibit, if it shall appear therefrom, or from any other evidence, that the estate is solvent, taking into consideration as well the claims presented before the expiration of twelve months from said granting of letters testamentary or of administration on which suit has been, or can yet be, instituted, as those so presented, allowed and approved, or established by judgment, and that the executor or administrator has in his hands sufficient funds for the payment of all the aforesaid claims, it shall be the duty of the county judge to order immediate payment to be made of all claims allowed and approved or established by judgment."

Article 3467 provides that, if the funds on hand are not sufficient for the payment of all the claims, or if the estate be insolvent, the court shall order the funds to be applied to the payment of all claims having a preference, in the order of their priority, if they or any of them be still unpaid, and then pro rata to the payment of the other claims. Article 3470 provides that in all cases where an order shall be made by any county judge, under the provisions of title 52, for an executor or administrator to pay over money to any person, and such payment is not made when demanded, such executor or administrator shall be liable on his official bond for damages at the rate of 5 per cent. a month for every month he shall neglect payment.

It appears from the articles of the statutes referred to that claims of the first class presented within 60 days may be paid at the end of that time, and should be paid then if there are sufficient funds on hand; that claims of the first class presented after 60 days fall into a class subordinate to allowances to the widow and minor children, but still having preference over claims of inferior grade, if filed within 12 months; that all other claims must be filed within 12 months in order to be entitled to payment according to classification. There is no provision made for payment under order of court until after 12 months, although it is contemplated that the executor or administrator will pay the first-class claims filed within 60 days as soon as he has sufficient funds on hand without an order of court directing such payment. The court is required to make an order allowing or rejecting each claim, and classifying those allowed. This order is noted on the claim docket and on the claim, but it is not contemplated that it shall be entered in the minutes. After the 12 months have expired and the exhibit has been filed the court makes an order directing the payment of claims, which order is entered on the minutes. This order is made in contemplation of the funds on hand, and when it is made the claimants are entitled to their money, and, if not paid, can sue on the bond for a penalty, and the money due them.

The order made in favor of C. L. Bass was entered on the minutes, but it is evident it was merely an order allowing and classifying a claim, and that it did not require the immediate payment of the amount; for it provides that it is to be paid out of any funds available and that may become available for the purpose. Instead of indorsing on the claim docket and on the claim the action of the court, it was entered as an order or judgment, but it is clear that it was not such an order as would subject the executrix to suit on her bond for failure to pay at once. The provision that the sum is to be paid out of any funds available or that may become available has no place in an order allowing a claim, and may be treated as surplusage; for the statutes provide the course to be pursued and the rights of the parties whose claims are allowed. It cannot be contended that the order constitutes a judgment directing the payment of money under article 3466 as well as an order allowing and classifying a claim; for it fails to disclose any intention to enter an order of such character as to require the immediate payment of the money under the penalty of paying 5 per cent. per month as damages. The court did not make a single statement which indicates that it had examined into the condition of the estate and determined that there was sufficient money on hand to pay the claim, and that under the law such money was required to be applied to the payment thereof. We do not think the order could be aided by proof of the circumstances under which it was made, but, if it could, the allegations in the controverting affidavit fail to show that 12 months had expired from the date of granting letters testamentary, and that an exhibit had been filed showing that the court was warranted in ordering the money paid at once. On the contrary, the allegations only show that the value of the estate is some $60,000, that plaintiff is informed and believes that all first-class claims have been paid, and that in due course Bass' claim will be paid, and that the total amount of second-class claims, besides that of Bass, does not exceed $5,000.

As the order was not one which had the effect of making the executrix liable to a suit against her individually for failure to pay at once, the rule approved by us does not apply, and the judgment must be affirmed, unless it is the law that, when a claim has been allowed by the executrix and approved by the

court it can be reached by garnishment, provided it is alleged and proven that the condition of the estate is such that it is certain the claim will eventually be paid. Such a rule would mean that whether the claim was subject to garnishment depends upon the decision of a question of fact in each case. We are sure that this cannot be permitted; for representatives of estates of decedents would be subjected to suits in their representative capacity to determine whether ultimately they would become liable individually, and much expense would be incurred not properly taxable against the administrator individually, nor against the estate. Besides, a claim not at once payable is not such a claim as our garnishment statutes contemplate may be reached.

The trial court was correct in sustaining the demurrers.

The judgment is affirmed.

